Brandt L. Wolkin, Esq. (SBN 112220)
bwolkin@wolkincurran.com
Catharine M. Tolson, Esq. (SBN 271223)
ctolson@wolkincurran.com
WOLKIN · CURRAN, LLP
111 Maiden Lane, Sixth Floor
San Francisco, California 94108
Telephone: (415) 982-9390
Facsimile: (415) 982-4328

Attorneys for Plaintiff
GLORIA SPALINGER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA--**

**SAN JOSE DIVISION**

| | |
|---|---|
| GLORIA SPALINGER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, a North Carolina Corporation; and DOES 1 through 10,<br><br>Defendants. | Case No.: 5:22-cv-04193-EJD<br><br>**PLAINTIFF GLORIA SPALINGER'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**<br><br>Hearing Date: October 5, 2023<br>Hearing Time: 09.00 a.m.<br>Location: Courtroom 4, 5th Floor<br>280 South 1st Street,<br>San Jose, CA 95113 |

PLEASE TAKE NOTICE THAT, on October 5, 2023 at 9:00 a.m., in Courtroom 4 of the above referenced court, or as soon thereafter as the matter may be heard by the Honorable Edward J. Davila of the above entitled Court, Plaintiff GLORIA SPALINGER ("Plaintiff") will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment in her favor against Defendant STATE FARM FIRE AND CASUALTY COMPANY ("Motion") as to her cause of action for an order of declaratory relief. Plaintiff seeks an order declaring that State Farm owes coverage for Plaintiff's claim for property damage sustained to her home when the battery on her home's thermostat ran out, rendering it unable to communicate with her furnace, resulting in the

furnace remaining on for a prolonged period of time with excessive temperatures sustained in the home (the "Loss").

Plaintiff seeks partial summary judgment on her first cause of action for declaratory relief that State Farm owes coverage for the Loss because (1) the Policy's Power Interruption coverage applies to grant coverage for the Loss, and (2) exclusions (g) and (l) relied upon by State Farm do not apply.

Partial summary judgment on Plaintiff's Declaratory Relief cause of action is appropriate as a matter of law because there is no genuine issue as to any material fact regarding the legal issue addressed by this Motion. This Motion is based upon this notice of motion, the accompanying memorandum of points and authorities, the Moving Separate Statement, the Stipulation of Facts and Documents, other such materials and arguments as may presented to the court at the time of hearing.

Respectfully submitted,

Dated: May 23, 2023

WOLKIN • CURRAN, LLP

By: */s/ Brandt L. Wolkin*

Brandt L. Wolkin, Esq.
Catharine M. Tolson, Esq.
Attorneys for Plaintiff
GLORIA SPALINGER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... 4

I. INTRODUCTION .......... 6

II. RELIEF SOUGHT .......... 6

III. STATEMENT OF FACTS .......... 6

A. The Incident .......... 6

B. State Farm Denies Plaintiff's Claim for Coverage .......... 7

IV. AUTHORITY .......... 10

A. California Law Applies to this Diversity Action .......... 10

B. Coverage is Triggered Under the Additional Coverage - Power Interruption Provision .......... 11

C. State Farm Cannot Meet its Burden of Proof to Apply Exclusion (g) to Preclude Coverage .......... 12

D. Battery Running out of Power is Not Mechanical Breakdown as Contemplated Under Exclusion (g) .......... 13

E. State Farm Cannot Rely on Exclusion (l) for Cracking, Settling Does Because the Damage Was Caused by a Covered Loss and the Ensuing Loss Provision Applies to Provide Coverage .......... 16

V. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**CASES**


*Acme Galvanizing Co., Inc. v. Fireman's Fund Ins. Co.*, 221 CA3d 170 (1990) .......... 10, 17

*AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807 (1990) .......... 13

*Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228 (5th Cir. 2007) .......... 12

*Bay Cities Paving & Grading, Inc. v. Lawyers Mutual Ins. Co.*, 5 Cal.4th 854 (1993) .......... 15

*Clemens v. American Warranty Corp*., 193 Cal.App.3d 444 (1987) .......... 14

*Cooper Companies v. Transcontinental Ins. Co.*, 31 Cal. App.4th 1094 (1995) .......... 15

*Delgado v. Heritage Life Ins. Co.*, 157 Cal. App.3rd 262 (1984) .......... 14

*Fairhaven Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. C-94-1177 DLJ, 1995 WL 354866, at *6 (N.D. Cal. June 2, 1995) .......... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .......... 10

*Montrose Chem. Corp. of California v. Admiral Ins. Co.*, 10 Cal.4th 645 (1995) .......... 13, 14

*Nat'l Invs. Fire & Cas. Co. v. Preddy*, 248 Ark. 320, 322 (1970) .......... 15

*Nissel v. Certain Underwriters at Lloyd's of London*, 62 Cal.App.4th 1103 (1998) .......... 13

*Reefer & General Shipping Co., Inc. v. Great White Fleet, Ltd.*, 855 F.Supp. 651 (S.D.N.Y.1994) .......... 14

*Resorts International, Inc. v. American Home Assur. Co.*, 311 So.2d 806 (Fla. Ct.App.1975) .......... 14, 15

*Safeco Ins. Co. v. Robert S.*, 26 Cal.4th 758 (2001) .......... 10

*St. Paul Fire and Marine Ins. Co. v. General Injectable, et al.*, 2000 WL 270954 .......... 11, 12

*Standard Structural Steel Co. v. Bethlehem Steel Corp.*,
597 F.Supp. 164 (D.Conn.1984) ........ 14

*Strubble v. United Services Auto. Ass'n*,
35 Cal.App.3d 498 (1973) ........ 13

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1 (1995) ........ 10

**STATUTES**

CA Civ. Code § 1636 ........ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a simple, but unfortunately all too common, case of an insurance company linguistically twisting policy language in order to deny coverage to its insured for what should be a straightforward, covered claim.

In this instance, the battery inside a home's wall-mounted thermostat ran out of power, rendering it unable to communicate with the furnace at the insured's home. Without the operational thermostat, the furnace remained on and reached excessive high temperatures over an extended period of time, causing morphing and distortion of the home's features, floors, walls, piping, etc., to the tune of $275,000 (the "Loss").

Remarkably, State Farm denied coverage for the Loss by concluding that a battery running out of power in a thermostat was considered a "mechanical breakdown," such that coverage was excluded. Stunningly absent from the denial was any discussion at all of the Power Interruption coverage which obviously applies to this Loss. The insured has pleaded with State Farm to reverse this nonsensical denial, even supplying State Farm with authorities contained herein that make clear that State Farm's denial is flat wrong. State Farm has instead doubled down, and refused coverage at all costs, forcing its insured to retain counsel, file the instant suit, and seek summary judgment.

## II. RELIEF SOUGHT

Plaintiff seeks partial summary judgment on its first cause of action for declaratory relief that State Farm owes coverage for the Loss because (1) the Policy's Power Interruption coverage applies to grant coverage for the Loss, and (2) exclusions (g) and (l) do not apply.

## III. STATEMENT OF FACTS

### A. The Incident

Plaintiff owns a home located on the NE Corner of 10th and Junipero, Carmel-by-the-Sea, California 93921, located in Monterey County, California (the "Property"), but does not principally reside at the Property. (*See* Moving Separate Statement ["MSS"] Fact 1.) In

October of 2020, Chris Dinner Heating, Inc. ("Chris Dinner") was hired by Plaintiff to replace the furnace and thermostat at the Property. (MSS Fact 2.)

Plaintiff's daughter, Brandi Weems, visited the Property in or about June 2021, and set the thermostat to 62 degrees upon leaving. (MSS Fact 3.) Thereafter, no one visited the Property until Ms. Weems returned on September 12, 2021. When she arrived, she felt a gust of hot air when she opened the front door and found that the Property had suffered morphing and distortion of features, floors, walls, and piping. (MSS Fact 4.)

Chris Dinner opined that, because the batteries in the thermostat had run out, the furnace could not shut off. (MSS Fact 5). Plaintiff also hired consultant Allana Buick & Bers to investigate the cause of the excessive heat output, and they determined that the batteries within the thermostat had lost all power resulting in the loss of power to the thermostat itself, rendering it non-operable. During the time in which the thermostat was without battery power, it was unable to communicate with the furnace, resulting in the furnace providing excessive heat to the property (the "Incident"). (MSS Fact 6.) Plaintiff asserts the Property suffered physical damage as a result of the Incident's excessive heat output over the prolonged period, including the morphing and distortion of features, floors, walls, and piping, in certain locations in the Property. (MSS Fact 7.) The cost to repair or replace those portions of the Property which suffered direct damages from the Incident exceeds $275,000. (MSS Fact 8.)

On September 13, 2021, the thermostat was replaced again by the Chris Dinner team, and there have been no further issues with the system. (MSS Fact 9.)

**B. State Farm Denies Plaintiff's Claim for Coverage**

On September 14, 2021, Plaintiff made a property claim for the Loss to her homeowners insurance policy carrier State Farm. (MSS Fact 10.) The Policy at issue is State Farm Homeowners Policy No. 05-B8-Y896-5 issued to Plaintiff effective November 4, 2020 through November 4, 2021 (the "Policy"). (MSS Fact 11.) The Policy provides coverage, in relevant part, as follows:

**SECTION I - LOSSES INSURED**

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

**SECTION I - LOSSES NOT INSURED**

1. We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded.

2. We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   * * *

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

5. We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, construction, grading, compaction;

      (3) materials used in construction or repair; or

      (4) maintenance;

> of any property (including land, structures, or improvements of any kind) whether on or off the **Property premises**; or
>
> c. weather conditions.
>
> However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

(MSS Fact 11.)

The State Farm Policy also contains a Section entitled ADDITIONAL COVERAGES a **Power Interruption** provision as set forth below:

> **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the Property premises. The power interruption must be caused by a Loss Insured occurring on the Property premises. The power lines off the **Property premises** must remain energized. This coverage does not increase the limit applying to the damaged property. (Policy §I – Additional Coverages, ¶ 7 (emphasis in original).)

(MSS Fact 12.)

On October 8, 2021, State Farm denied coverage for the damages from the Incident. State Farm stated, in relevant part:

> You indicated that no one had been at the property between late June and September, 2021, and this loss was discovered in mid-September. Based upon the report from Chris Dinner Heating, it was determined that the batteries in the thermostat died, and the furnace could not shut off. It appeared the furnace ran until the safety limit switch in the furnace shut down. After the unit cooled down, the limit switch would reset itself, and the unit would come on again. The cycle would start again and continue to repeat. The inside of the dwelling heated up and over time resulted in cracking, shrinking expansion and bulging of walls, floors.
>
> **The predominant cause of loss is mechanical breakdown of the thermostat. Your Homeowners Policy, Form FP-7955 CA, as modified by Endorsement FE-3422, specifically excludes coverage for this type of damage**. *(Emphasis added.)*

(MSS Fact 13.)

On March 9, 2022, Plaintiff's attorney at that time sent a letter to State Farm requesting State Farm reconsider its coverage decision and pay the loss. (MSS Fact 14.) Counsel cited its consultant from Allana Buick & Bers' finding that no mechanical breakdown occurred. *Id.* Counsel also contested State Farm's reliance on the exclusions at

Section II Paragraph 2(h) of the Policy for cracking, settling, etc. for the position that the Policy "specifically excludes coverage for this type of damage." Counsel argued that while the Policy excludes damage *caused by* cracking, settling, etc., it does indeed provide coverage where cracking, settling, etc. occur as a *consequence* of some other non-excluded cause of loss. Counsel further urged State Farm to find coverage for the loss under the Policy's Power Interruption coverage and/or as an Ensuing Loss. *Id.* Counsel correctly stated that the ensuing loss provision applies because the cracking and settling *is* the loss (resultant damage), rather than it being the *cause* of the loss. *Acme Galvanizing Co., Inc. v. Fireman's Fund Ins. Co.,* 221 Cal.App.3d 170, 179-180 (1990) (ensuing loss provision applies "to the situation where there is a "peril," i.e., a hazard or occurrence which causes a loss or injury, *separate* and *independent* but resulting from the original excluded peril."). However, State Farm maintained its position nonetheless. (MSS Fact 15.) Plaintiff filed suit on July 19, 2022. (MSS Fact 16.)

## IV. AUTHORITY

### A. California Law Applies to this Diversity Action

As this case sits in diversity jurisdiction of this Court, California law applies to interpret the Policy. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). In California, where determining the meaning of coverage under an insurance policy, the mutual intention of the parties as it existed at the time of contracting governs interpretation. (CA Civ. Code § 1636.) "'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 18 (1995). "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Safeco Ins. Co. v. Robert S.,* 26 Cal.4th 758, 763 (2001).

///

///

### B. Coverage is Triggered Under the Additional Coverage - Power Interruption Provision

State Farm's denial completely ignores the fact that the Policy specifically provides coverage for physical loss caused by change in temperature from a power loss within the Property (MSS Fact 12, 13). The Policy has a Section titled **ADDITIONAL COVERAGES,** which provides:

> 7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **Property premises**. The power interruption must be caused by a Loss Insured occurring on the **Property premises**. The power lines off the **Property premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

(Policy §I – Additional Coverages, ¶ 7 (emphasis in original); MSS Fact 12.)

Giving this policy provision its plain and ordinary meaning, the Loss is clearly the Power Interruption insuring Agreement in the State Farm Policy. Here, power to the thermostat was interrupted, which caused a change in temperature, which resulted in accidental direct physical loss to the Property. (MSS Fact 5, 6.) This was a power interruption at the Property's thermostat only, meaning that the power lines off the Property were not compromised. *Id.* Therefore, the Additional Coverage paid for by the insureds and provided by the Power Interruption provision is triggered for the Loss.

Although there is no California case law interpreting this policy provision, the interpretation by other courts of the Power Interruption provision is consistent with a finding of coverage in this matter. In *St. Paul Fire and Marine Ins. Co. v. General Injectable, et al.,* 2000 WL 270954, the U.S. District Court in W.D. Virginia upheld a power interruption provision in a policy notwithstanding St. Paul's valiant attempt to impose several exclusions to preclude coverage. In that case, a sensor tripped and shut down a refrigeration unit at a warehouse that was housing vaccines. *Id.* at *1. The sensor was inspected and found to be in good working order, and the experts were unable to determine the cause of the trip. *Id.* at *2. The St. Paul policy had power interruption coverage substantively similar to the coverage at issue here, which stated coverage applies to a "loss that results from utility

interruption if the break in service occurs at the insured location and is covered by a covered cause of loss." *Id.* at *1. Despite the obvious trigger of coverage, St. Paul attempted to preclude coverage under a number of different exclusions. The Court refused to uphold any of the exclusion, as they would contradict the clear intent of the Policy to provide coverage for power interruption and render the policy "worthless." *Id.* at *9.

In the state of Louisiana after Hurricane Katrina, the Court discussed power interruption coverage in *Arias-Benn v. State Farm Fire & Cas. Ins. Co.,* 495 F.3d 228 (5th Cir. 2007). In *Arias-Benn,* an insured brought a putative class action against State Farm, alleging it had breached the homeowner's policy by refusing to replace her freezer and refrigerator units that were damaged by food putrefaction as a result of power outages after Katrina. In analyzing a nearly identical Power Interruption provision in the policy, the Court held that because the damage to the refrigerator and/or freezer was caused by a power outage that occurred outside the Property premises, there was no coverage. *Id.* at 232. The Court specifically noted that "the presence of expanded coverage for one particular type of loss attributable to power interruption (one 'occurring on the *Property premises'*, with '[t]he power lines off the *Property premises*... remain[ing] energized') indicates the exclusion of other, unspecified types of loss attributable to such interruption." *Id.*

This holding in *Arias-Benn* is consistent with the circumstance here, where the opposite factual context exists. Here, unlike *Arias-Benn,* the power interruption was within the Property premises with the power lines off site remaining energized.

The Policy provides power interruption coverage for precisely the circumstances that occurred at the Spalinger Property. The inside power interruption caused a temperature change that resulted in physical damage to the property, which is specifically covered under the plain language of the policy provision.

**C. State Farm Cannot Meet its Burden of Proof to Apply Exclusion (g) to Preclude Coverage**

Under an all risk policy such as this, where all losses are insured except those that are specifically excluded, the insured only bears the burden of proving that a loss occurred.

The burden then shifts to the insurer to establish that the loss is excluded by the terms of the policy. *Strubble v. United Services Auto. Ass'n,* 35 Cal.App.3d 498 (1973) (under an "all risk" policy, burden is on the insurer to prove the absence of coverage).

Here, State Farm's denial of coverage concludes without any evidence that the "predominant cause of loss is mechanical breakdown of the thermostat," and denies coverage under exclusion 2(g) for loss resulting from "mechanical breakdown." As discussed herein, State Farm cannot meet their burden to establish that the mechanical breakdown exclusion applies. Therefore, coverage is trigged.

### D. Battery Running out of Power is Not Mechanical Breakdown as Contemplated Under Exclusion (g)

State Farm's denial letter recognizes that the cause of Plaintiff's loss is that the battery ran out of power rendering her thermostat inoperable and the furnace unable to shut off. (MSS Fact 14.) Thus, before this court is the legal issue of whether a battery running out of power ought to be considered a mechanical breakdown as contemplated in this Policy, and State Farm has the burden of proof. *Strubble, supra,* 35 Cal.App.3d 498.

The term "mechanical breakdown" is not defined, therefore it is to be interpreted in its "ordinary and popular sense. *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 821-823 (1990); see also *Montrose Chem. Corp. of California v. Admiral Ins. Co.,* 10 Cal.4th 645, 666-667 (1995) (the "clear and explicit" meaning of provisions, interpreted in their "ordinary and popular sense" controls); and *Nissel v. Certain Underwriters at Lloyd's of London,* 62 Cal.App.4th 1103, 1111-1112 (1998) (policy language must be evaluated in context with consideration given to the policy as a whole, the circumstances of the case in which the claim arises and "common sense."). General principles of common sense, the insured's reasonable expectation of coverage, and the widely enforced rules against ambiguity in interpretation all call for a reversal of State Farm's denial.

In California, the mutual intention of the parties at the time the contract is formed governs interpretation, and that intent is to be inferred, if possible, "solely from the written provisions of the contract." *AIU, supra,* 51 Cal.3d at 821-822. Uncontroverted law requires

that insuring clauses are to be interpreted broadly in favor of the insured in order to uphold and protect reasonable and objective expectations of insureds. *Montrose, supra,* 10 Cal.4th at 667. Exclusionary clauses, on the other hand, as the ones relied upon by State Farm here, are construed strictly against the insurer and liberally in favor of insureds. *Delgado v. Heritage Life Ins. Co.,* 157 Cal. App.3rd 262, 271 (1984).

Applying these standards and principles in this context, the common sense definition of "mechanical breakdown" would not include a battery naturally running out of power. Common sense and reasonable interpretations of what qualifies as a mechanical breakdown can be discerned from dictionary definitions. The term "mechanical" is defined by Webster's dictionary as "(1) of or relating to machinery; (2) produced or operated by a machine or tools." [https://www.merriam-webster.com/dictionary/mechanical]. Breakdown is defined as "the failure to function." [https://www.merriam-webster.com/dictionary/breakdown]. An ordinary person would not consider a battery as "machinery," nor consider a battery running out of power at the end of its useful life as a "breakdown." In fact, a battery wearing down over time is precisely the way a battery is intended to operate.

California courts have consistently defined a "breakdown" as involving defective or malfunctioning equipment, which is not the case here. *Fairhaven Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. C-94-1177 DLJ, 1995 WL 354866, at *6 (N.D. Cal. June 2, 1995)(interpreting a mechanical breakdown exception to a faulty workmanship exclusion and finding that said language should be interpreted in favor of the insured), citing *Clemens v. American Warranty Corp*. 193 Cal.App.3d 444, 453 (1987) ("a failure of a defective part, or faulty workmanship of a covered component"); *Reefer & General Shipping Co., Inc. v. Great White Fleet, Ltd.,* 855 F.Supp. 651, 656 (S.D.N.Y.1994) (agreement that breakdown involved equipment malfunction); *Standard Structural Steel Co. v. Bethlehem Steel Corp.,* 597 F.Supp. 164, 196–97 (D.Conn.1984) (fault in machinery's working mechanism); and *Resorts International, Inc. v. American Home Assur. Co.,* 311 So.2d 806, 806 (Fla. Ct.App.1975) ("a sudden and accidental breakdown of the object, or a

part thereof which manifests itself at the time of its occurrence by the physical damage to the object which necessitates repair or replacement of the object or part thereof.").

Out of state authority also supports a finding of coverage for the current Loss. In *Nat'l Invs. Fire & Cas. Co. v. Preddy*, 248 Ark. 320, 322 (1970), an Arkansas Court held that when in interpreting the phrase in light of the rules of interpreting in a light most favorable to the insured, the term mechanical breakdown references "a failure in the working mechanism of the machinery—a functional defect in the moving parts of the equipment which causes the latter to cease functioning or to function improperly." *Id.* Again, it defies logic to describe a battery running out of power as having suffered a mechanical breakdown.

Finally, any other definition offered by State Farm to support the mechanical breakdown denial, at best, makes the phrase ambiguous as there are competing definitions for the same term. Ambiguous policy provisions are strictly construed against the drafting insurer. *Bay Cities Paving & Grading, Inc. v. Lawyers Mutual Ins. Co.,* 5 Cal.4th 854, 867 (1993);and *Cooper Companies v. Transcontinental Ins. Co.,* 31 Cal. App.4th 1094, 1106 (1995) (holding that ambiguous provision will be construed against the insurer if inconsistent with the insured's objectively reasonable expectations).

Lastly, applying a mechanical breakdown exclusion where a policy provides a power interruption clause is inherently contradictory. In *St. Paul, supra,* the Court refused to apply a similar mechanical breakdown exclusion where the sensor tripped, causing power to be interrupted to the refrigeration units and vaccines to be damaged. *Id.* at *8. The policy issued by St. Paul included coverage for power interruption. The Court held that applying a mechanical breakdown exclusion to a power interruption clause would mean that there would only ever be coverage for non-mechanical power outages, such as "persons bumping into things in the dark." *Id.* at *8. The Court thus held that the "'mechanical breakdown: clause is incompatible with the underlying coverage for power interruptions." *Id.*

Such is the case here. The Policy specifically grants coverage for power interruption. Inherently, electrical power nearly always has some means of mechanical

involvement. Excluding a broad category of power interruptions caused by mechanical breakdown would be contradictory and render the entire clause illusory. It would mean that power interruption coverage would only apply in rare instances, and it would not be reasonable for any insured to understand or accept that limitation when agreeing to coverage terms.

### E. State Farm Cannot Rely on Exclusion (l) for Cracking, Settling Does Because the Damage Was Caused by a Covered Loss and the Ensuing Loss Provision Applies to Provide Coverage

Though not specifically relied upon in State Farm's denial, State Farm does include a quote of exclusion (l) in its recitation of policy language in its coverage position letter. (MSS Fact 13.) Accordingly, in anticipation of any argument that exclusion (l) for cracking, settling, etc., applies, Plaintiff presents the authorities herein which render this exclusion inapplicable to the claim.

Exclusion (l) is subject to an ensuing loss provision, which provides coverage for a "resulting loss" (aka ensuing loss). The exclusion read together with the ensuing loss provision states:

> 2. We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below….
>
> * * *
>
> l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;
>
> However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

(MSS Fact 12.)

The qualifying language under exclusion (l) is the ensuing loss provisions, which are commonly used in policies such as this to "operate as an exception to the exclusions. The purpose is to restore coverage for losses that flow ("ensue") from an earlier excluded loss but are caused by a covered peril (*e.g.*, a fire (covered) that ensues from faulty workmanship (excluded))." *Acme Galvanizing Co., supra,* 221 Cal.App.3d at 179-180. Accordingly,

because this Loss was caused by a covered peril, power interruption, exclusion (l) does not apply. The Loss was not *caused by* settling, cracking, shrinking, bulging, etc., but rather the loss *is* settling, cracking, shrinking, bulging, etc., and therefore is a consequence and not a cause of the Loss.

## V. **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests partial summary judgment on her declaratory relief cause of action that the Loss is covered by the Power Interruption coverage and that Exclusions (g) and (l) do not apply to preclude coverage.

Dated: May 23, 2023

WOLKIN • CURRAN, LLP

By: ***/s/ Brandt L. Wolkin***

Brandt L. Wolkin, Esq.
Catharine M. Tolson, Esq.
Attorneys for Plaintiff
GLORIA SPALINGER