STEPHEN M. HAYES (SBN 83583)
shayes@hayesscott.com
STEPHEN P. ELLINGSON (SBN 136505)
sellingson@hayesscott.com
JAMIE A. RADACK (SBN 221000)
jradack@hayesscott.com
HAYES SCOTT BONINO
ELLINGSON & GUSLANI LLP
333 Twin Dolphin Drive, Suite 230
Redwood City, California 94065
Telephone: 650.637.9100
Facsimile: 650.637.8071

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY (erroneously sued as State Farm Fire and Casualty Company)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GLORIA SPALINGER, an individual<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, a North Carolina Corporation; and DOES 1 through 10,<br><br>Defendants. | Case No.: 5:22-cv-04193-EJD<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S NOTICE OF CROSS-MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION**<br><br>Date: October 5, 2023<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila<br>Ctrm: 4, 5th Floor |

///

///

///

///

///

///

///

///

# TABLE OF CONTENTS


| | | Page(s) |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | STATEMENT OF UNDISPUTED MATERIAL FACTS | 3 |
| | A. Plaintiff's Claim | 3 |
| | B. The Policy | 5 |
| III. | STATE FARM IS ENTITLED TO SUMMARY JUDGMENT | 6 |
| IV. | WELL-SETTLED RULES OF INSURANCE POLICY INTERPRETATION MANDATE SUMMARY JUDGMENT FOR STATE FARM | 7 |
| V. | THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE POLICY PRECLUDES COVERAGE FOR THE LOSS | 8 |
| | A. The Loss Was Caused by a Mechanical Breakdown | 8 |
| | B. The Cracking, Shrinking, Expansion, or Bulging Exclusion Precludes Coverage | 10 |
| | C. There is no Coverage for the Cracking, Shrinking, Expansion, or Bulging of the Property Under the Ensuing Loss Provision | 11 |
| | D. Coverage is Excluded Under the Design, Workmanship, Maintenance Exclusion | 12 |
| | E. There is no Coverage Under the Power Interruption Provision | 12 |
| VI. | PLAINTIFF'S BAD FAITH CLAIM FAILS BECAUSE STATE FARM HANDLED HER CLAIM REASONABLY AS A MATTER OF LAW | 14 |
| VII. | STATE FARM IS ENTITLED TO SUMMARY JUDGMNET OF PLAINTIFF'S UCL CLAIM BECAUSE SHE HAS AN ADEQUATE REMEDY AT LAW | 17 |
| VIII. | PLAINTIFF'S UCL CLAIM FAILS AS A MATTER OF LAW | 18 |
| | A. Plaintiff's UCL Claim Does Not Allege Unlawful, Unfair or Fraudulent Conduct | 18 |
| | B. Plaintiff's Request for Injunctive Relief is Improper | 19 |
| IX. | PLAINTIFF CANNOT ESTABLISH HER CLAIM FOR PUNTIIVE DAMAGES AS A MATTER OF LAW | 20 |
| X. | CONCLUSION | 22 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aceves v. Allstate Ins. Co.*,
68 F.3d 1160 (9th Cir. 1996) ....................15

*Acme Galvanizing Co., Inc. v. Fireman's Fund Ins. Co.*,
221 Cal.App.3d 170 (1990) ....................11

*Allstate Ins. Co. v. Smith*,
929 F.2d 447 (9th Cir. 1991) ....................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................6, 7, 21

*In Re Angelia P.*,
28 Cal.3d 908 (1981) ....................20

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
214 Cal.App.3d 1 (1989) ....................18

*Arias-Benn v. State Farm Fire & Cas. Co.*,
495 F.3d 228 (5th Cir. 2007) ....................14

*Bank of the West v. Sup.Ct.*,
2 Cal.4th 1254 (1992)....................18

*Bardin v. Daimlerchrysler Corp.*,
136 Cal.App.4th 1255 (2006)....................19

*Basich v. Allstate Ins. Co.*,
87 Cal.App.4th 1112 (2001) ....................20, 21

*Beck v. State Farm Mut. Auto. Ins. Co.*,
54 Cal.App.3d 347 (1976) ....................20

*Blake v. Aetna Life Ins. Co.*,
99 Cal.App.3d 901 (1979) ....................15

*Bray v. Safeway Stores, Inc.*,
392 F.Supp. 851 (N.D. Cal. 1975)....................19

*Brodkin v. State Farm Fire & Casualty Co.*,
217 Cal.App.3d 210 (1989) ....................10

*California Shoppers, Inc. v. Royal Globe Ins. Co.*,
175 Cal.App.3d 1 (1985) ....................14, 15

*Century Surety Co. v. Polisso*,
139 Cal.App.4th 922 (2006) ....................15

*Gamliel v. State Farm Ins. Co.*,
2022 WL 1592595 (2022) ....................16

*Hartford Cas. Ins. Co. v. Swift Dist., Inc.*,
59 Cal.4th 277 (2014) ....................8, 13

*James River Ins. Co. v. Herbert Schenk, P.C.*,
523 F.3d 915 (9th Cir. 2008) ....................6

*Jones v. First American Title Ins. Co.*,
107 Cal.App.4th 381 (2003) ....................17

*Klien v. Earth Elements*,
59 Cal.App.4th 965 (1997) ....................19

*Krantz v. BT Visual Images*,
89 Cal.App.4th 164 (2001) ....................17

*Larez v. Oberti*,
23 Cal.App.3d 217 (1972) ....................19

*Levine v. Blue Shield of Cal.*,
189 Cal.App.4th 1117 (2010) ....................18

*Love v. Fire Ins. Exch.*,
221 Cal.App.3d 1136 (1990) ....................8

*Lunsford v. Am. Guar. & Liab. Ins. Co.*,
18 F.3d 653 (9th Cir. 1994) ....................16

*Madrid v. Perot Systems Corp.*,
130 Cal.App.4th 440 (2005) ....................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ....................7

*Mock v. Mich. Millers Mut. Ins. Co.*,
4 Cal.App.4th 306 (1992) ....................20, 21

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*,
187 Cal.App.4th 766 – 784 ....................8, 11

*Murray v. State Farm Fire & Casualty Co.*,
219 Cal.App.3d 58 (1990) ....................10, 11

*Nat'l Investors Fire & Cas. Co. v. Preddy*,
248 Ark. 320 (1970) ....................9

*National Auto v. Stewart*,
223 Cal.App.3d 452 (1990) ....................7, 8

*National Life & Accident Ins. Co. v. Edward*,
119 Cal.App.3d 326 (1981) ....................15

*National Union Fire Ins. Co. v. Estate of Meyer*,
192 Cal.App.3d 866 (1987) ....................7

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
210 F.3d 1099 (9th Cir. 2000) ....................7

*Conservatorship of O.B.*,
9 Cal. 5th 989 (2020) ....................21

*In re Oracle Corp. Securities Litigation*,
627 F.3d 376 (9th Cirt. 2010) ....................7

*Paslay v. State Farm General Ins. Co.*,
248 Cal.App.4th 639 (2016) ....................16

*Patrick v. Maryland Casualty Co.*,
217 Cal.App.3d 1566 (1990) ....................21

*Prudential Home Mortgage Co. v. Sup.Ct.*,
66 Cal.App.4th 1236 (1998) ....................18

*Rappaport-Scott v. Interinsurance Exch. of Auto Club*,
146 Cal.App.4th 831 (2007) ....................16

*Reader's Digest Ass'n v. Superior Court*,
37 Cal.3d 244 (1984) ....................20

*Reichert v. State Farm Gen. Ins. Co.*,
212 Cal.App.4th 1543 (2012) ....................12

*Safeco Ins. Co. v. Gilstrap*,
141 Cal.App.3d 524 (1983) ....................8

*Samura v. Kaiser Foundation Health Plan, Inc.*,
17 Cal.App.4th 1284 (1993) ....................20

*Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*,
78 Cal. App. 4th 847 (2000) ....................21

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
72 Cal.App.4th 861 (1999) ....................19

*St. Paul Fire and Marine Ins. Co. v. General Injectable, et al.*,
2000 WL 270954 ....................13, 14

*State Farm Fire and Cas. Co. v. Martin*,
668 F.Supp. 1379 (1987) ....................10

*Stewart v. Truck Ins. Exchange*,
17 Cal.App.4th 468 (1993) ....................21

*Szarowicz v. Birenbaum*,
58 Cal. App. 5th 146 (2020) ....................21

*Tomaselli v. Transamerica Ins. Co.*,
25 Cal.App.4th 1269 (1994) ....................21

*Estate of Tucker v. Interscope Records*,
515 F.3d 1019 (9th Cir. 2008) ....................7

*Varig Airlines v. Walter Kidde & Co.*,
960 F.2d 1235 (9th Cir. 1982) ....................6

*Waller v. Truck Ins. Exch.*,
11 Cal.4th 1 (1995) ....................7, 8

*Wilkison III v. Wiederkehr*,
102 Cal.App.4th 822 (2002) ....................18

*William C. McCaughey, et al. v. Ohio Sec. Ins. Co.*,
2021 WL 2548689 (C.D. Cal. Apr. 2, 2021) ....................8, 9

*Wilson v. Farmers Ins. Exch.*,
102 Cal.App.4th 1171 (2002) ....................12

**Statutes**

Business and Professions Code § 17200 ....................1, 18

Business and Professions Code section 17200 et seq. ....................3, 4, 23

Cal. Civil Code § 3294 ....................20

Civ. Code §1636 ....................8

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

NOTICE IS HEREBY GIVEN that defendant State Farm General Insurance Company ("State Farm"), will move for Summary Judgment, or in the Alternative, Partial Summary Judgment, under Fed. R. Civ. Proc. 56 on October 5, 2023 at 9:00 a.m. as follows:

**Issue No. 1:** State Farm is entitled to summary judgment as to the entire Complaint on the grounds that plaintiff's claim for policy benefits is not covered under her State Farm homeowner's insurance policy.

**Issue No. 2:** State Farm is entitled to partial summary judgment of plaintiff's third cause of action for breach of the implied covenant of good faith and fair dealing and fourth cause of action for violation of Business and Professions Code § 17200 ("UCL") on the grounds that even if policy benefits are owed, the undisputed facts establish that State Farm handled plaintiff's claim reasonably as a matter of law.

**Issue No. 3:** State Farm is entitled to partial summary judgment of plaintiff's fourth cause of action for violation of the UCL on the separate and independent grounds that it is an equitable claim and she has an adequate remedy at law.

**Issue No. 4:** State Farm is entitled to summary adjudication of plaintiff's fourth cause of action for violation of the UCL on the grounds that the undisputed facts establish that State Farm's actions were not unfair, unlawful, or fraudulent.

**Issue No. 5**: State Farm is entitled to summary adjudication of plaintiffs' claim for punitive damages on the grounds that the undisputed facts establish there is no clear and convincing evidence that State Farm acted with malice, fraud, or oppression in handling plaintiff's claim.

This cross-motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the parties' Joint Stipulation of Facts and Documents, Moving Separate Statement of Facts, and all pleadings and papers filed herein, and any other matters as the Court deems appropriate.

///

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

The stipulated facts of this insurance coverage case establish that State Farm is entitled to summary judgment because plaintiff's claim was unambiguously excluded under her State Farm policy. And even if not excluded, these facts at a minimum establish her bad faith claim fails because State Farm reasonably disputed coverage.

This action arises out of plaintiff's claim for damage to her vacation home. For the purposes of cross-motions, the parties stipulated that the alleged damage resulted from the breakdown of the heating system, i.e., the thermostat and furnace. At some point while the property was vacant, the batteries in the thermostat died so it stopped functioning. The failure of the thermostat caused the furnace to overheat because its safety trip was not set to turn off at the proper temperature. The overheating allegedly caused the property to expand and contract, which resulted in cracks, separation, and related damage.

State Farm investigated the loss and determined it was excluded under multiple separate and independent policy exclusions. First, the loss was caused by a mechanical breakdown of the thermostat followed by failure of the furnace to properly shut off. Mechanical breakdown is not a covered loss. Second, the loss was caused by cracking, shrinking, expansion or bulging of the property, none of which are a covered cause of loss under the policy. Third, the loss was caused by either the faulty furnace, workmanship in its the installation, or plaintiff's failure to maintain the system. Each of these causes of loss is excluded under the policy. Finally, contrary to plaintiff's erroneous contention, the power interruption provision does not provide coverage for the loss because it is subject to the applicable exclusions. Absent coverage for the loss, plaintiff's claims fail as a matter of law.

Moreover, the stipulated facts establish that State Farm handled plaintiff's claim reasonably as a matter of law. State Farm interviewed plaintiff's daughter who discovered the loss and submitted the claim. State Farm learned that the loss was caused by the mechanical breakdown of the thermostat and/or the faulty furnace and reasonably

determined coverage was excluded. When plaintiff presented new information, State Farm reevaluated the claim. However, the new information did not change the conclusion that the loss was caused by a mechanical breakdown and maintained its proper denial based on the applicable exclusions.

Yet even if State Farm's denial was somehow incorrect, it was not unreasonable to conclude the loss was caused by an excluded mechanical breakdown or other excluded cause. At a minimum, the facts presented by this claim raised a genuine dispute regarding interpretation of the policy as to the cause of loss and whether it was covered. State Farm's denial of the claim was based on this genuine dispute. As such, plaintiff's claims for bad faith, related claim for violation of Business and Professions Code section 17200 et seq. and claim for punitive damages fail as a matter of law.

Plaintiff's claim for violation of Business and Professions Code section 17200 et seq. fails because she has an adequate remedy at law, i.e., damages, and because there is no evidence that State Farm's conduct was unfair, unlawful or fraudulent. Her claim for punitive damages fails because there is no evidence, let alone clear and convincing evidence, that State Farm's actions were fraudulent, malicious or oppressive.

Accordingly, State Farm's motion for summary judgment, or in the alternative, partial summary judgment must be granted.

## II.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff's Claim

The material facts of this case are stipulated for the purpose of the parties' cross-motions. Plaintiff owns a home located on the NE Corner of 10th and Junipero, Carmel-by-the-Sea, California (the "Property"). The Property is not plaintiff's principal residence. (State Farm's Moving Separate Statement ["SSMSS"] Fact 1.)

In October of 2020, plaintiff hired Chris Dinner Heating, Inc. ("Dinner") to replace the heating system (furnace and thermostat) at the Property. (SMSS Fact 2.) In June 2021, plaintiff's daughter Brandy Weems visited the Property. When she left, she set the

thermostat to 62 degrees. (SMSS Fact 3.) When she next visited the Property on September 12, 2021, she opened the front door, and felt a gust of hot air (the "Incident"). (SMSS Fact 4.) The following day, Dinner replaced the thermostat. (SMSS Fact 9.) Dinner explained "the batteries in the thermostat died, so the furnace could not shut off." (SMSS Fact 5.)

Plaintiff hired consultant Allana Buick & Bers, who determined the batteries in the thermostat had lost power. According to Allana Buick & Bers, while the thermostat was without power, it was unable to communicate with the furnace, resulting in it providing excessive heat to the Property. (SMSS Fact 6.)

On September 14, 2021, plaintiff submitted a claim to State Farm. (SMSS Fact 10.) Plaintiff asserts the damage was due to excessive heat over the prolonged period, including morphing and distortion of features, floors, walls, and piping. (SMSS Fact 7.)

On October 7, 2021, State Farm Claim Representative Jane Anderson informed Weems there was no coverage for the loss because it was the result of a mechanical breakdown, which is excluded under the Policy. (SMSS Fact 13.) In addition, the damage consisted of "cracking, shrinking, expansion, bulging, etc." which was also excluded. The loss "also appeared to be a workmanship" issue excluded under the Policy. State Farm formally denied coverage for the claim the following day. *Id.*

On October 21, 2021, Weems informed State Farm that a heating company called Della Mora had concluded that the furnace "had a bad high temperature limit switch, not tripping at the setting temperature of 170 degrees, tripping at 215 degrees." (SMSS Fact 14.) State Farm informed Weems the information from Della Mora did not change the claim decision.

On March 9, 2022, plaintiff's attorney Rosanna E. Fristed sent a letter to State Farm requesting reconsideration of its coverage decision. (SMSS Fact 14.) Fristed explained she retained consultant Allana Buick & Bers to inspect the heating system. *Id*. They concluded the batteries to the thermostat had died rending it inoperable. *Id*. As a result, it could not communicate with the furnace, which subsequently overheated the Property. *Id*.

///

On March 31, 2022 and on April 15, 2022, State Farm spoke with Fristed and confirmed its denial. (SMSS Fact 15.)

**B. <u>The Policy</u>**

State Farm issued Homeowners Policy No. 05-B8-Y896-5 to plaintiff effective November 4, 2020 through November 4, 2021 (the "Policy"). (SMSS Fact 11.) The Policy insures for accidental direct physical loss to the Property, except as provided in **SECTION I – LOSSES NOT INSURED** as follows:

> **SECTION I - LOSSES INSURED**
>
> **COVERAGE A - DWELLING**
>
> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**
>
> **SECTION I - LOSSES NOT INSURED**
>
> 1. We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded.
>
> 2. We do not insure for any loss to the property described in Coverage A which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
>    g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;
>
>    l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;
>
>    However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section. (SMSS Fact 11.)
>
> 5. We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:
>
>    a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; (SMSS Fact 11.)

The State Farm Policy also included the following Additional Coverage subject to all the terms, provisions, exclusions and conditions of the Policy:

> **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the residence premises. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property. (SMSS Fact. 12.)

## III.

## STATE FARM IS ENTITLED TO SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248-249. A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the opposing party. *Id.*, at 248. "[A] party cannot manufacture a genuine issue of material fact merely by making allegations in its legal memoranda." *Varig Airlines v. Walter Kidde & Co.*, 960 F.2d 1235 (9th Cir. 1982). Where the opposing party has the burden of proof on an issue at trial, the moving party may prevail by presenting evidence that negates an essential element of the opposing party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the claim. *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008).

If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading" but must produce evidence that "sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008). The motion "may not be defeated . . . by evidence that is "merely colorable" or "is not significantly probative." *Anderson*, 477 U.S. 242, at 249-50. The opposing party must show more than the "mere existence of a scintilla of evidence" more than "some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cirt. 2010) quotation and citation omitted). Rather, the opposing party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Oracle*, 627 F.3d at 387. Otherwise, the moving party is entitled to summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1103 (9th Cir. 2000).

## IV.

## WELL-SETTLED RULES OF INSURANCE POLICY INTERPRETATION MANDATE SUMMARY JUDGMENT FOR STATE FARM

Whether an insurance policy provides coverage for a claim is a question of law. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 18 (1995). A court must first examine the coverage provisions to determine whether the plaintiff has met his or her initial burden to establish the claim falls within the grant of coverage. *Id*. If there is no potential for liability under the grant of coverage, the court must not give a strained construction to impose liability the insurer has not assumed. *National Auto v. Stewart*, 223 Cal.App.3d 452, 462 (1990).

An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected. *National Union Fire Ins. Co. v. Estate of Meyer*, 192 Cal.App.3d 866, 872 (1987). "Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer, strict construction does not mean strained construction. We may not, under the guise of strict

construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Safeco Ins. Co. v. Gilstrap*, 141 Cal.App.3d 524, 532-533 (1983). Thus, courts consistently uphold limitations on coverage. *National Auto v. Stewart,* 223 Cal.App.3d at 461.

If an exclusion to coverage applies, and the exclusion is subject to an exception that restores coverage, the insured has the burden to prove the exception applies. *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal.App.4th 766, 783 – 784, citing *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188 (1998).

The mutual intention of the parties at the time the contract is formed governs. Civ. Code §1636; *Hartford Cas. Ins. Co. v. Swift Dist., Inc.*, 59 Cal.4th 277, 288 (2014). In determining this intent, "[t]he rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id*. We consider the "'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" *Id.*

When an insured's breach of contract claim fails because the policy does not provide coverage for a loss, their bad faith claim also fails. *Waller,* 11 Cal.4th at 36; *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1148-1149 (1990).

## V.

## THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE POLICY PRECLUDES COVERAGE FOR THE LOSS

### A. The Loss Was Caused by a Mechanical Breakdown

The California Central District Court recently interpreted the term "mechanical breakdown" as it applied to a policy exclusion in *William C. McCaughey, et al. v. Ohio Sec. Ins. Co.*, 2021 WL 2548689, at *6 (C.D. Cal. Apr. 2, 2021). There, the court examined the "ordinary and popular sense" of the term "mechanical breakdown." Using the Merriam Webster definition of "breakdown" as a "failure to function," the court concluded that "a malfunction can be construed within the ordinary and popular definition of breakdown." *Id*.

The court rejected the argument that the definition of "breakdown" required "replacement or repair" as opposed to a "malfunction." *Id*. The court concluded that "a malfunction can be construed within the ordinary and popular definition of breakdown." *Id*.

Here, plaintiff claims the loss was caused by failure of the thermostat due to dead batteries. The dead batteries caused the furnace to overheat because the high temperature limit switch was improperly set. The "breakdown" of the thermostat required "replacement or repair" with the installation of new batteries. That "breakdown" caused the defectively set furnace to overheat and resulted in the loss. Since the loss was caused by a "mechanical breakdown" of the thermostat and furnace, it is excluded under the clear and unambiguous terms of the Policy.

Plaintiff mistakenly relies on *Nat'l Investors Fire & Cas. Co. v. Preddy*, 248 Ark. 320, 322 (1970). That case involved an air duct under a concrete floor that was damaged when the concrete collapsed on top of it. *Id*. The court interpreted the "mechanica1 breakdown" exclusion to mean a "failure in the working mechanism of machinery– a functiona1 defect in the moving parts of the equipment which causes the [equipment] to cease functioning or to function improper1y." *Id*. The *Preddy* court analogized the loss to a mechanical breakdown in a motor vehicle: "For example, when the thermostat on a motor vehicle sticks we refer to it as mechanical trouble; but when a tire goes flat we simply refer to it as tire trouble." *Id*. That reasoning establishes that *Preddy* actually supports State Farm's position. In this case, the thermostat got "stuck" in the off position, i.e., a failure in the working mechanism. That failure caused the equipment, i.e., the thermostat and furnace, to cease functioning properly.

Even if the failure of the furnace to shut down due to a dead battery is somehow not a "mechanical breakdown," the failure of the furnace to shut down because of its faulty switch certainly is. Indeed, the cases cited by plaintiff for the proposition that a "mechanical breakdown" requires "defective or malfunctioning equipment" applies to directly to the faulty furnace.

///

The Policy unambiguously excluded coverage for damage caused by "mechanical breakdown." Even under the definition proffered by plaintiff, the exclusion applies here. The damage to the Property was caused by the thermostat ceasing to function, which caused the furnace to cease functioning properly. Because the loss was caused by a "mechanical breakdown" of the heating system, it was excluded under the Policy and State Farm is entitled to summary judgment.

**B. <u>The Cracking, Shrinking, Expansion, or Bulging Exclusion Precludes Coverage</u>**

Policy exclusions applying to "cracking, shrinking, expansion, or bulging" have consistently been upheld and deemed unambiguous. *State Farm Fire and Cas. Co. v. Martin*, 668 F.Supp. 1379, 1383 (1987) (exclusion barred coverage for cracking, bulging, and tilting) *Brodkin v. State Farm Fire & Casualty Co*., 217 Cal.App.3d 210, 217 (1989) (exclusion bared coverage for cracking foundation); *Murray v. State Farm Fire & Casualty Co*., 219 Cal.App.3d 58, 63, 65 (1990) (language held unambiguous) (citing *Sabella v. Wisler*, 59 Cal.2d 21, 27 (1963)).

The damage to the Property plainly involved "cracking, shrinking, expansion, or bulging," which is excluded under the Policy. Photographs of the Property show *cracking* and other points of obvious *expansion* resulting in damage. (SMSS, Exhibit K.) Weems stated that when she opened the door to the Property she was greeted by a gust of hot air. Dinner explained the furnace could not shut off because of the non-functioning thermostat. The furnace likely ran until the safety limit switched and shut down. Then the Property cooled down until the safety limit switch reset itself and would come back on. Plaintiff later explained the non-functioning thermostat caused the furnace to run up to 215 degrees rather than 170 degrees, resulting in excessive heat within the Property. Taken together, it is clear the excessive heat caused expansion, bulging and then shrinking when the temperature decreased which resulted in the cracking and expansion evidenced in the photographs.

Plaintiff attempts to sidestep this exclusion by asserting the loss was not *caused* by settling, cracking, expansion, bulging or shrinking but that those *issues* are the loss. However, the loss in this case is the damage to the Property, which required repair. The

damage was plainly caused by settling, cracking, expansion, bulging or shrinking. Indeed, plaintiff's argument is belied by her own evidence. No one reasonably can dispute that the damage, i.e., the cracking and expansion points illustrated in the photographs, was the result of the excessive heat/cooling cycle that caused the Property to bulge, expand, and then shrink and crack.

**C. <u>There is no Coverage for the Cracking, Shrinking, Expansion, or Bulging of the Property Under the Ensuing Loss Provision</u>**

An ensuing loss provision is an exception to an exclusion that plaintiff has the burden to prove. *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, *supra*, 187 Cal.App.4th at 783 – 784. It restores coverage for an excluded loss when a covered loss flows or ensues from that earlier excluded loss. *Acme Galvanizing Co., Inc. v. Fireman's Fund Ins. Co.*, 221 Cal.App.3d 170, 179-180 (1990). Thus, for example, in *Acme*, a steel kettle filled with molten zinc ruptured due to a latent defect, which was an excluded cause of loss. However, the molten zinc caused a fire that destroyed the building. Fire was a new, covered cause of loss not excluded under the policy. As such, there was coverage under the "ensuing loss" exception. *Acme*, 221 Cal.App.3d 170 at p. 180. However, where the cause of loss is excluded, such as a deterioration of a water pipe, and the resulting loss *is also excluded* such as "settling, cracking, shrinking, bulging, or expansion," the ensuing loss provision does not apply because there is still no covered cause of loss. *See Murray v. State Farm Fire & Casualty Co.*, *supra*, 219 Cal.App.3d 58, 65.

Plaintiff incorrectly asserts the loss is covered by the power interruption provision. As outlined above, however, the power interruption provision is subject to all Policy exclusions, including the settling, cracking, shrinking, bulging, or expansion exclusion. Thus, the ensuing loss provision would only be triggered if a subsequent, covered, non-excluded peril, such as fire, had to have caused the damage to be covered. Since the damage to the Property was caused by settling, cracking, shrinking, bulging, or expansion, a non-covered peril, the ensuing loss provision has not been triggered, and there is no coverage for the loss.

Since the Policy unambiguously excludes coverage for losses caused by cracking, shrinking, expansion, and bulging, plaintiff's claim for such loss to the Property is excluded and State Farm is entitled to summary judgment.

**D. Coverage is Excluded Under the Design, Workmanship, Maintenance Exclusion**

"[A] loss caused by inadequate repair, construction, renovation, or remodeling" is excluded under the faulty or defective workmanship exclusion. *Wilson v. Farmers Ins. Exch.*, 102 Cal.App.4th 1171, 1174 (2002). "[T]his exclusion [is] intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured of someone authorized by him." *Wilson*, 102 Cal.App.4th at p. 1176; *see also Reichert v. State Farm Gen. Ins. Co.*, 212 Cal.App.4th 1543, 1554 (2012) [faulty workmanship exclusion provides broad language to exclude losses from third party negligent conduct]; *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449 (9th Cir. 1991) ["faulty workmanship," interpreted to apply to a flawed quality of the product].

The faulty workmanship and repair exclusion applies to the defective heating system because it was caused by a "*defect*, weakness, *inadequacy*, *fault* or unsoundness in: *design*, *specifications, workmanship*…*materials* used in construction or repair;" or in its "*maintenance*." Whether Dinner's workmanship was defective or faulty, or the heating system was defective, inadequate, or faulty in their design or specifications, there is no coverage for the resulting loss. The Policy is not meant to be a guarantor of either Dinner's work or the functionality of the heating system.

Even if the loss was not caused by Dinner or faulty equipment, it also was caused by the insured's failure to maintain the thermostat and allowing the batteries to die while the Property was vacant for two months.

Because the loss was excluded based on defective, inadequate, or faulty workmanship, equipment, and/or maintenance, State Farm is entitled to summary judgment.

**E. There is no Coverage Under the Power Interruption Provision**

There do not appear to be any California authorities addressing the language of the power interruption provision. Nevertheless, the rules of policy interpretation require the

court to look to the policy language and "to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Hartford Cas. Ins. Co. v. Swift Dist., Inc.*, *supra*, 59 Cal.4th at 288. The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense" govern. *Id.*

Subject to the exclusions above, the power interruption provision provides there is only coverage for a power interruption if it is caused by a "Loss Insured." The Policy provides coverage for "**LOSSES INSURED**" including "accidental direct physical loss to the property described in Coverage A, *except as provided in* **SECTION I - LOSSES NOT INSURED**."

The power interruption provision does not provide coverage for this loss because it was a "Loss Not Insured." As outlined above, the loss was excluded under at least one of three separate and independent exclusions of coverage: 1) mechanical breakdown; 2) cracking, shrinking, expansion, bulging; and/or 3) faulty or defective workmanship. Each of these exclusions bar coverage under the power interruption provision. Therefore, there is no coverage under that provision for this loss.

Plaintiff's reliance on inapposite, out of state cases does not change this result. The policy in *St. Paul Fire and Marine Ins. Co. v. General Injectable, et al.*, 2000 WL 270954 provided coverage for a loss that resulted in "utility interruption," unless otherwise excluded. *Id*. at *1. A power interruption caused a refrigeration unit to fail resulting in the loss of stored vaccines. The sensor in the cooling unit that tripped was in good working order. *Id*. at *2. The court evaluated the application of the exclusions cited by the insurer and noted that "[if] any one of these exclusions is determined to exclude the claimed loss" the insured would not be entitled to policy benefits. *Id*. at *4. The court then evaluated each exclusion and found they did not apply to the specific facts of that loss. *Id*. One exclusion precluded coverage for a loss caused by an extreme change in temperature. *Id*. at *7. The court found that applying the exclusion to the change in temperature in the cooling unit would render the coverage "practically worthless" since the insured specifically obtained the increased coverage to coverage that exact peril. *Id*.

Plaintiffs rely on *St. Paul Fire* for the mistaken proposition that the applicable exclusions render the power interruption provision "worthless." However, the provision at issue in *St. Paul Fire* was specifically obtained to provide coverage for the exact loss that occurred. The coverage was meant to indemnify the insured for losses to its vaccine supply should the cooling units stopped working. The court found the exclusions contradictory to the purpose of the policy, which was to protect the cooling unit. *Id*.

In direct contrast, the power interruption provision here was not specifically obtained to cover damage caused by failure of the heating system. The provision here provides coverage for a loss caused by a power interruption that is not otherwise excluded. For example, had the power been interrupted by lightning, animals chewing through wiring, or some other non-excluded cause, which lead to a properly installed, maintained and functioning heating system to shut down resulting in loss of covered property, there may be coverage.[1] Those are not the circumstances here. Here, the interruption of power was not caused by, and did not cause, a covered loss. Rather, the interruption of power was caused by a mechanical breakdown, failure to properly install or maintain the thermostat, which lead to the failure of the faulty furnace to overheat and cause the Property to crack, shrink, expand and/or bulge. These are "**LOSSESS NOT INSURED**" under the clear and explicit terms of the Policy.

Accordingly, because the power interruption provision is subject to the applicable exclusions of coverage, it does not provide coverage for the loss and State Farm is entitled to summary judgment.

## VI.

## PLAINTIFF'S BAD FAITH CLAIM FAILS BECAUSE STATE FARM HANDLED HER CLAIM REASONABLY AS A MATTER OF LAW

An insurer only breaches the implied covenant if it unreasonably or without proper cause withholds policy benefits. *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175

[1] The facts of *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228 (5th Cir. 2007) are consistent with this premise. Had the power interruption there occurred on the property, there may have been coverage for the putrefaction of food that resulted to the loss of power to the refrigerators and freezers.

Cal.App.3d 1, 54 (1985). The *California Shoppers* court explained, "declining to perform a contractual duty under the policy ***with proper cause*** is not a breach of the implied covenant." *Id*. (emphasis in original).

California law does not impose bad faith liability on insurance companies for mistakes. *Aceves v. Allstate Ins. Co*., 68 F.3d 1160, 1166 (9th Cir. 1996) ("In California, mere negligence is not enough to constitute unreasonable behavior and does not establish a breach of the implied covenant of good faith and fair dealing in an insurance case."); *National Life & Accident Ins. Co. v. Edward*, 119 Cal.App.3d 326, 339 (1981) (although the insurer's claims handling "may have constituted negligent behavior, it . . . did not constitute a violation of the covenant of fair dealing.") Indeed, to hold an insurer liable for breach of the implied covenant, there must be proof that the insurer *consciously* and *deliberately* deprived the insured of policy benefits. *Century Surety Co. v. Polisso*, 139 Cal.App.4th 922, 949 (2006). As the *Polisso* court explained:

> There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather ***by a conscious and deliberate act***, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.' *Century Surety Co.*, 139 Cal.App.4th at 950. (emphasis added) (quoting *Chateau Chamberay Homeowners Assn. v. Associated Int'l. Ins. Co.*, 90 Cal.App.4th, 335, 346 (2001)).

Further, an insurer's willingness to reconsider denial of a claim can support a finding the insurer handled the claim in good faith. *Blake v. Aetna Life Ins. Co.*, 99 Cal.App.3d 901, 924 (1979).

Where there is a genuine dispute as to the duty to pay benefits, the insurer does not breach the implied covenant by withholding them:

> [A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith *even though it might be liable for breach of contract*. *Chateau Chamberay,*90 Cal.App.4th at 350 (emphasis added).

///

If there is a genuine issue, *as a matter of law* the denial of the claim was not unreasonable. *Rappaport-Scott v. Interinsurance Exch. of Auto Club*, 146 Cal.App.4th 831 (2007); *see also Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994).

A genuine dispute over coverage warrants summary judgment on a bad faith claim even if there is a triable issue as to breach of contract, i.e., the existence of coverage under the policy. *Paslay v. State Farm General Ins. Co.*, 248 Cal.App.4th 639, 796 (2016). In *Paslay*, the plaintiffs suffered a water loss at their property. The plaintiffs and the insurer debated the scope of repairs that were covered by the policy. Ultimately, the insurer refused to pay for certain repairs it concluded were not covered. The *Paslay* court affirmed summary judgment of plaintiff's bad faith claim, *despite finding a triable issue of fact as to whether the insurer owed additional policy benefits* because there was a genuine dispute as to the extent of covered damage. *Paslay*, 248 Cal.App.4th at 796, fn 9.

More recently in *Gamliel v. State Farm Ins. Co.*, 2022 WL 1592595 *5 (2022), the court granted partial summary judgment of plaintiffs' causes of action for bad faith and punitive damages on the grounds that State Farm's reasonable investigation revealed a potential basis for denial. Specifically, plaintiffs suffered a water loss after a pipe encased within the foundation of their home leaked. *Id*. at *1. Plaintiffs' plumber provided a declaration stating that the leak was caused by a sudden discharge of a massive amount of water. State Farm relied on the City's water usage records to conclude the leak had been continuous. *Id*. at *2. The court concluded that because it was impossible to observe the rate or volume of water leaking from the pipe, there was a *genuine dispute* as to whether the loss was excluded. *Id*. *5.

The stipulated facts of this case establish State Farm handled plaintiff's claim reasonably based on the information provided during its investigation. State Farm worked with Weems on plaintiff's behalf to investigate the claim. Weems explained the heating system had been replaced by Dinner in October 2020. She further explained the Property was not plaintiff's primary residence. Weems was the last person to visit the Property in July 2021.

When Weems next visited the Property two months later, she opened the door to a gust of hot air. She had Dinner replace the thermostat again, and he told her the batteries to it had died so the furnace did not turn off. Della Mora confirmed Dinner's explanation and added that the furnace's temperature limit switch was tripping at 215 degrees instead of 170 degrees.

After considering the information provided by Weems, State Farm concluded the loss was excluded under three different exclusions: mechanical breakdown, cracking, shrinking, expansion, bulging, and faulty workmanship. When Weems submitted additional information from Allana Buick & Bers merely confirming Dinner and Della Mora's explanation, State Farm reasonably confirmed its denial. State Farm also considered plaintiff's coverage arguments, but reasonably concluded its denial of coverage was correct.

These circumstances simply do not support a finding of bad faith. State Farm obtained all the available information from Weems regarding the loss, and reasonably concluded that one of at least three separate and independent exclusions applied to bar coverage. State Farm also considered plaintiff's additional information and arguments, but they did not include any new information. At most, plaintiff's claim raised a genuine dispute regarding application of the Policy exclusions to the loss. As such, it was reasonable as a matter of law for State Farm to deny the claim.

Accordingly, because there was a genuine dispute as to State Farm's liability under the Policy, State Farm is entitled to summary judgment of plaintiffs' bad faith claim.

## VII.

## STATE FARM IS ENTITLED TO SUMMARY JUDGMNET OF PLAINTIFF'S UCL CLAIM BECAUSE SHE HAS AN ADEQUATE REMEDY AT LAW [2]

A plaintiff seeking equitable relief must establish there is no adequate remedy at law available. *See Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452 (2005). Reformation of a written instrument is an equitable remedy. *See Jones v. First American*

[2] Initially, plaintiff's UCL claim fails where her other claims fail because it must "stand or fall depending on the fate of the antecedent substantive causes of action." *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178 (2001).

*Title Ins. Co.*, 107 Cal.App.4th 381, 388 (2003); *see also Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal.App.3d 1, 3-4 (1989). Likewise, a claim for violation of the UCL must include an appropriate request for injunctive relief and/or restitution[3], and establish an inadequate remedy at law. *Bank of the West v. Sup.Ct.*, 2 Cal.4th 1254, 1266-67 (1992); *Prudential Home Mortgage Co. v. Sup.Ct.*, 66 Cal.App.4th 1236, 1249 (1998). Where the conduct that allegedly supports the request for equitable relief also gives rise to separate causes of action for monetary damages, equitable relief is inappropriate. *See Wilkison III v. Wiederkehr*, 102 Cal.App.4th 822, 830 (2002).

Here, plaintiff does not need equitable relief to make her whole. Plaintiff's tort allegations provide an adequate remedy at law—monetary damages. Moreover, plaintiff's allegations through their UCL claim form the exact same basis of plaintiff's breach of contract and bad faith clams under which she seeks monetary relief. This makes the relief plaintiff seeks under the UCL improper as well. Plaintiff may not concurrently seek monetary relief through her tort and contract claims and equitable relief through the UCL. As such, plaintiff's UCL claim is legally defective and subject to summary judgment.

## VIII.

## PLAINTIFF'S UCL CLAIM FAILS AS A MATTER OF LAW

Plaintiff's UCL claim necessarily fails as a matter of law because she does not allege unlawful, unfair, or fraudulent conduct. Plaintiff's request for injunctive relief is improper because it would necessarily entail tedious court supervision of State Farm's business activities and potential regulatory interference. Either of these alone is sufficient to overcome plaintiff's UCL claim on summary judgment.

### A. Plaintiff's UCL Claim Does Not Allege Unlawful, Unfair or Fraudulent Conduct

To state a claim for violation of the UCL, a plaintiff must show that the defendant committed a business act that is either fraudulent, unfair, or unlawful. Bus. & Prof. Code §17200; *Levine v. Blue Shield of Cal.*, 189 Cal.App.4th 1117, 1136 (2010). "An *unlawful* business practice or act is an act or practice, committed pursuant to business activity that is

[3] The Complaint does not include a prayer for restitution.

at the same time forbidden by law." *Klien v. Earth Elements*, 59 Cal.App.4th 965, 969 (1997) (emphasis added). A *fraudulent* business practice "as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived (citations omitted)." *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,72 Cal.App.4th 861, 888 (1999) (emphasis added).

California law as to what constitutes an *unfair* business practice in consumer cases, however, is somewhat unsettled. *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260 (2006). The *Bardin* Court recognized that "[t]here are two lines of appellate opinions addressing the definition of 'unfair' within the meaning of the UCL in consumer actions. One line defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* The second line of cases holds that the "public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Id.* at 1260-1261.

Plaintiff's UCL claim does not satisfy the requirements of unlawful or fraudulent conduct, nor does it meet either standard defining "unfair" conduct. The undisputed facts establish that State Farm reasonably investigated plaintiff's claim. Plaintiff has not identified any laws that State Farm is alleged to have violated and State Farm did not engage in any deceptive practices. Nor did State Farm engage in any conduct with intent to harm anyone, and it did nothing that would be likely to deceive the public. State Farm's conduct was not a violation of the UCL, because it did nothing unlawful, unfair, or fraudulent. Thus, State Farm is entitled to summary adjudication on plaintiff's UCL claim.

**B. <u>Plaintiff's Request for Injunctive Relief is Improper</u>**

The practicality of drafting, supervising, and enforcing an injunctive order is a factor in determining whether injunctive relief is appropriate. *Larez v. Oberti*, 23 Cal.App.3d 217, 222 (1972). "[A] court shall not issue an injunction that would be inconvenient or inefficient to administer." *Bray v. Safeway Stores, Inc.*, 392 F.Supp. 851, 868 (N.D. Cal.

1975). Injunctions under the UCL cannot be used as judicial means to regulate in areas already committed to heavy regulations. *See Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 1301 (1993).

Plaintiff seeks "injunctive relief" to prohibit "the performance of any proven unfair business practices in the future and mandating that State Farm properly train its claims handling personnel…" (Complaint, p. 11:4-7.) Plaintiff is asking the Court to oversee the way State Farm investigates and processes future claims. However, each insurance claim raises different factual questions, implementing this relief would require tedious and continuing supervision by the court. The proposed injunctive relief would also impermissibly interfere with the regulatory power of the Department of Insurance. Plaintiff has an adequate remedy of law and has failed to request any remedies available under or authorized by the UCL. Plaintiff's UCL claim fails as a matter of law.

## IX.

## PLAINTIFF CANNOT ESTABLISH HER CLAIM FOR PUNTIIVE DAMAGES AS A MATTER OF LAW

A claim for punitive damages requires plaintiff to prove by *clear and convincing evidence* malice, fraud or oppression—that is, "despicable" conduct. Cal. Civil Code § 3294. "Clear and convincing evidence" consists of evidence "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." *In Re Angelia P.*, 28 Cal.3d 908, 919 (1981). "The law does not favor punitive damages and they should be granted with the greatest caution." *Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal.App.3d 347, 355 (1976). The "despicable" requirement is a separate, additional element. *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 328 (1992).

In ruling on a motion for summary judgment of a claim for punitive damages, the court must evaluate whether the evidence submitted by the opposition constitutes *clear and convincing evidence* pursuant to the higher burden of proof for such a claim. *Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244, 252 (1984); *Basich v. Allstate Ins. Co.*, 87

Cal.App.4th 1112, 1118-1119 (2001); *Stewart v. Truck Ins. Exchange*, 17 Cal.App.4th 468, 482 (1993) (relying on *Anderson*, at 254–255); *see Conservatorship of O.B.*, 9 Cal. 5th 989, 1003 (2020) (courts evaluating evidence sufficiency under clear and convincing standard must take that standard into account); *Szarowicz v. Birenbaum*, 58 Cal. App. 5th 146, 171 (2020) ("'[i]n ruling on a summary judgment or summary adjudication motion, 'the judge must view the evidence presented through the prism of the substantive [clear and convincing] evidentiary burden.,'" citation omitted.)

Where the plaintiff fails to submit clear and convincing evidence of malice, fraud or oppression, the court must summarily adjudicate the punitive damages claim in the defendant's favor, *even if the court concludes there is a triable issue of fact on the bad faith claim*. *Basich*, 87 Cal.App.4th at 1118-1122.

Evidence that the insurer has violated its duty of good faith and fair dealing does not alone establish that it acted with the requisite intent to justify an award of punitive damages. *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 890 (2000) (evidence required for punitive damages is "of a different dimension" from that required for insurance bad faith liability; *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1286 (1994) (same); *Patrick v. Maryland Casualty Co.*, 217 Cal.App.3d 1566, 1575 (1990); *Mock*, 4 Cal.App.4th at 328 (1992). To establish that an insurer's conduct was sufficiently beyond bad faith to support punitive damages, there must be *clear and convincing evidence* that the insurer acted maliciously, oppressively or fraudulently. *Mock*, 4 Cal.App.4th at 328. Even overzealous and callous claim handling will not warrant punitive damages if it falls short of being malicious or despicable. *Shade Foods, Inc.*, 78 Cal. App. 4th at 892-893 (carriers' "careless disregard for the rights of its insured and an obstinate persistence in an ill-advised initial position" and "persist[ence] in an unreasonable denial of first-party coverage" " falls within the common experience of human affairs, both with respect to its careless initial evaluation and its stubborn persistence in error" and does not justify punitive damages): *Tomaselli*, 25 Cal.App.4th at 1288 fn. 14.

The stipulated facts and evidence establish there is no coverage for the Incident. State Farm promptly and thoroughly investigated plaintiff's claim and correctly determined there was no coverage. Indeed, there are three separate and independent exclusions that apply to this loss, any one of which supports denial of the claim.

There is simply no evidence, let alone clear and convincing evidence, that State Farm acted with malice, fraud, or oppression during the handling of plaintiff's claim. There is no evidence that it acted "despicably." There is no evidence that its conduct was beyond that of the common experience of human affairs of persons attempting to act reasonably. Thus, even if the Court finds a question of fact regarding the reasonableness of State Farm's claim handling, it is entitled to partial summary judgment of plaintiff's claim for punitive damages as a matter of law.

## X.

## CONCLUSION

The stipulated, undisputed facts of this case entitle State Farm to summary judgment. There is no dispute plaintiff reported the alleged damage to the Property was caused by a breakdown of the heating system, i.e., the thermostat's batteries died so it failed to control the furnace. The furnace had a defectively set safety mechanism, which resulted in extreme temperature swings. These temperature swings caused the property to expand and contract which resulted in cracks, separation, and related damage.

State Farm investigated the loss and determined it was excluded under multiple, separate, and independent policy exclusions. First, the loss was caused by a mechanical breakdown of the thermostat followed by the furnace. Mechanical breakdown is not a covered loss. Second, the loss was caused by cracking, shrinking, expansion or bulging of the property, none of which is a covered cause of loss. Third, the loss was caused by either the faulty furnace, workmanship in its the installation or plaintiff's failure to maintain the system. Each of these causes of loss is excluded under the Policy. Finally, contrary to plaintiff's erroneous contention, the power interruption provision does not provide coverage

///

for the loss because it is subject to the applicable exclusions. There being no Policy benefits owed, plaintiff's claims fail as a matter of law.

Moreover, the stipulated evidence establishes that State Farm handled plaintiff's claim reasonably as a matter of law. State Farm interviewed plaintiff's daughter who discovered the loss and submitted the claim. It learned that the loss was caused by the mechanical breakdown of the thermostat and/or the faulty furnace and reasonably determined coverage was excluded. When plaintiff presented new information, State Farm reevaluated the claim. However, the new information did not change the conclusion that the loss was caused by a mechanical breakdown and maintained its proper denial based on the applicable exclusions.

Yet even if State Farm's denial was somehow incorrect, it was not unreasonable to conclude the loss was caused by an excluded mechanical breakdown or other excluded cause. At a minimum, the facts presented by this claim raised a genuine dispute regarding interpretation of the Policy as to the cause of loss and whether it was covered. State Farm's reasonable investigation lead it to resolve that dispute by denying the claim. As such, plaintiff's claims for bad faith, related claim for violation of Business and Professions Code section 17200 et seq. and claim for punitive damages fail as a matter of law.

Moreover, plaintiff's claims for violation of Business and Professions Code section 17200 et seq. and for punitive damages fail because plaintiff has an adequate remedy at law, which precludes her 17200 cause of action, and there is no evidence that State Farm's actions were unfair, unlawful, fraudulent, malicious or oppressive.

///

///

///

///

///

///

///

Accordingly, State Farm's motion for summary judgment, or in the alternative, partial summary judgment must be granted and plaintiff's motion for partial summary judgment must be denied.

Dated: June 22, 2023

HAYES SCOTT BONINO
ELLINGSON & GUSLANI LLP

By: *_/S/ Stephen P. Ellingson_*
STEPHEN M. HAYES
STEPHEN P. ELLINGSON
JAMIE A. RADACK
Attorneys for Defendants
STATE FARM GENERAL INSURANCE COMPANY