UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GLORIA SPALINGER,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, et al.,<br><br>Defendants. | Case No. 5:22-cv-04193-EJD<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGEMENT; DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 33, 39 |

Plaintiff, Gloria Spalinger ("Spalinger"), brought this action against Defendant, State Farm General Insurance Company ("State Farm") (collectively, "Parties"), alleging that State Farm's denial of Spalinger's insurance claim gives rise to claims for declaratory relief, breach of contract, breach of the duty of good faith and fair dealing, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* Compl., ECF No. 1. Before the Court are Spalinger's motion for partial summary judgment as to the first cause of action for declaratory relief, as well as State Farm's cross-motion for summary judgment as to all causes of action. Pl.'s Mot. for Summ. J. ("MSJ"), ECF No. 33; Def's Cross-Mot. for Summ. J. ("Cross-MSJ"), ECF No. 39. Both motions are fully briefed. Pl.'s Opp'n to Def.'s Cross-MSJ and Reply to Def.'s Opp'n ("Pl.'s Opp'n"), ECF No. 41; Def.'s Reply to Pl.'s Opp'n to Cross-MSJ ("Def.'s Opp'n"), ECF No. 42.

The Court heard oral arguments from the Parties on October 5, 2023, and took the matter under submission. ECF No. 43. For the reasons stated below, the Court **GRANTS** Spalinger's motion for partial summary judgment and **DENIES** State Farm's cross-motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed. *See* Pl.'s Reply Separate Statement of Facts ("Undisputed Facts"), ECF No. 41-2.

Spalinger and State Farm entered into a homeowners insurance policy (the "Policy") for Spalinger's residence in Monterey County, California (the "Residence"), effective from November 4, 2020, through November 4, 2021. *Id.* at 5. This case arises from State Farm's refusal to cover the damages resulting from the batteries in Spalinger's thermostat dying.

In October 2020, Chris Dinner Heating ("Dinner") replaced Spalinger's thermostat and furnace. *Id.* at 2. In June 2021, Spalinger's daughter visited the property and set the thermostat to sixty-two degrees. *Id.* at 3. On September 12, 2021, Spalinger visited the property and felt a gust of hot air when she opened the front door, observing that the Property had suffered morphing and distortion of features, floors, walls, and piping. *Id.*

Plaintiff hired consultant Allana Buick & Bers to investigate the cause of the excessive heat output, and they determined that the batteries within the thermostat had lost all power resulting in the loss of power to the thermostat itself, rendering it inoperable. *Id.* at 3–4. During the time in which the thermostat was without battery power, it was unable to communicate with the furnace, resulting in the furnace providing excessive heat to the property (the "Incident"). *Id.* at 4. Dinner also opined that because the batteries in the thermostat had run out, the furnace could not shut off. *Id.* On September 13, 2021, the thermostat was replaced again by the Dinner team. *Id.* at 5.

Spalinger asserts that the Residence suffered physical damage as a result of the Incident's excessive heat output over the prolonged period, including the morphing and distortion of features, floors, walls, and piping, in certain locations in the property (the "Loss"). *Id.* Spalinger also asserts that the cost to repair or replace those portions of the Residence which suffered direct damages from the Incident exceeds $275,000. *Id.*

On September 14, 2021, Plaintiff made a property claim for the Loss to her homeowners insurance policy carrier, State Farm. *Id.* Plaintiff asserted that the Loss was covered under a

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
2

provision regarding power interruption ("Power Interruption Provision"), located in a section titled "Additional Coverage," which provides, in relevant part:

> **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by a Loss Insured occurring on the residence premises. The power lines off the **Property premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

*Id.* at 8 (emphasis in original).

On October 8, 2021, State Farm denied coverage, claiming that the damages were the result of a "mechanical breakdown" of the thermostat. *Id.* State Farm stated, in relevant part:

> You indicated that no one had been at the property between late June and September, 2021, and this loss was discovered in mid-September. Based upon the report from Chris Dinner Heating, it was determined that the batteries in the thermostat died, and the furnace could not shut off. It appeared the furnace ran until the safety limit switch in the furnace shut down. After the unit cooled down, the limit switch would reset itself, and the unit would come on again. The cycle would start again and continue to repeat. The inside of the dwelling heated up and over time resulted in cracking, shrinking expansion and bulging of walls, floors.
>
> The predominant cause of loss is mechanical breakdown of the thermostat. Your Homeowners Policy, Form FP-7955 CA, as modified by Endorsement FE3422, specifically excludes coverage for this type of damage.

*Id.* at 8–9 (emphasis added).

It appears from the letter that State Farm relied on two exclusions when denying coverage. Section I of the Policy, titled "Losses Not Insured," provides that State Farm does not insure for any loss to the property caused by, in relevant part: (1) "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or **mechanical breakdown**," ("Mechanical Breakdown Provision") and (2) "settling, **cracking, shrinking, bulging, or expansion** of pavements, patios, foundation, walls, floors, roofs or ceilings" ("Cracking, Shrinking, Bulging, Expansion Provision"). *Id.* at 7 (emphasis added).

On March 9, 2022, Plaintiff's attorney at that time sent a letter to State Farm requesting State Farm reconsider its coverage decision. *Id.* at 10. Plaintiff's attorney argued that its

consultant from Allana Buick & Bers found that no mechanical breakdown occurred; contested State Farm's reliance on the Cracking, Shrinking, Bulging, Expansion Provision because the cracking, shrinking, bulging, and settling occurred as a consequence of a non-excluded Loss, not as the cause itself; and urged State Farm to find coverage for the Loss under the Policy's Power Interruption coverage and/or as an Ensuing Loss coverage. *Id.* State Farm adds that the letter also informed State Farm that a heating company called Della Mora concluded that the furnace "had a bad high temperature limit switch, not tripping at the setting temperature of 170 degrees, tripping at 215 degrees." *Id.*

State Farm has maintained its declination of coverage.

Spalinger filed this suit on July 19, 2022, bringing four causes of action against State Farm: (1) a declaration and determination from the Court that the Policy provides coverage for property damage resulting from the power outage at the Residence; (2) breach of contract; (3) tortious breach of the covenant of good faith and fair dealing; and (4) violation of the UCL. Compl.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only when the moving party shows that there is no genuine dispute of material fact. A genuine dispute exists if there is sufficient evidence that a reasonable fact finder could decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And that dispute is material if it might affect the outcome of the suit. *Id.* In determining if a genuine dispute of material fact exists, a court must "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party bears the burden of persuading the Court that there is no genuine dispute of material fact, and it also bears the initial burden of producing evidence that demonstrates there is no dispute. *Cunningham v. Medtronic, Inc.*, 2018 WL 4053446, at *2 (N.D. Cal. Aug. 24,

2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the moving party bears the ultimate burden of persuasion, its initial burden of production is to "establish 'beyond controversy every essential element of'" its claim or defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted). If the moving party satisfies this initial burden, the nonmoving party can nonetheless defeat summary judgment by showing "the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *Id.*

### III. DISCUSSION

#### A. Spalinger's Motion for Partial Summary Judgment

Spalinger seeks partial summary judgment on her first cause of action for a declaration that the Policy's Power Interruption coverage applies to the Loss, and exclusions for "Mechanical Breakdowns," "Cracking, Shrinking, Expansion, or Bulging," or the "Design, Workmanship, Maintenance" do not apply.

As this case sits in diversity jurisdiction of this Court, California law applies to interpret the Policy. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). In California, courts interpret the "clear and explicit" meaning of contractual provisions in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (Cal. 1990) (quoting Cal. Civ. Code § 1636). In the insurance context, insurers generally bear the burden of proving a claim is excluded. *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal. 3d 395, 406 (Cal. 1989) ("[O]nce the insured shows that an event falls within the scope of basic coverage under the policy, the burden is on the insurer to prove a claim is specifically excluded."). It is well-settled law in California that "the policy will be construed to meet the reasonable expectations of the insured, the insuring clause will be broadly construed and exclusions strictly construed, and any ambiguity will be construed in favor of the insured." *Id.* at 433.

The Court will first analyze whether Spalinger brought herself into coverage under the Power Interruption Provision before moving into the exclusionary provisions introduced by State Farm.

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
5

### 1.     Power Interruption Provision

To begin, Spalinger argues that the Loss falls squarely within the Power Interruption provision, which, to reiterate, reads:

> **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by a Loss Insured occurring on the residence premises. The power lines off the **Property premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

Undisputed Facts 8 (emphasis in original).

Spalinger argues that the thermostat's power was interrupted by a dead battery, which caused a change in temperature, which resulted in the Loss, and there were no interruptions to the power lines off residence. MSJ 11–12. State Farm does not contest Spalinger's argument that the Loss fits the description of the Power Interruption Provision in its briefing; instead, State Farm focuses on its arguments that coverage is nevertheless excluded under the three provisions the Court will discuss in greater detail below. *See* Cross-MSJ 12–14.

While the Court would proceed to resolve reasonable ambiguity in favor of coverage, *AIU Ins. Co.*, 51 Cal. 3d at 822, there is no need here—as the Court finds that the Power Interruption Provision unambiguously covers the Loss experienced here. There is no case law construing the Power Interruption Provision, but construing the clear and explicit meaning of the Power Interruption terms in their ordinary and popular sense meaning, the Court finds that the Power Interruption Provision reasonably describes the Loss experienced here. First, Spalinger suffered a "physical loss" in the form of morphing and distortion of features, floors, walls, piping, and etc., and there are no allegations that the loss was anything but "accidental." Second, there is no dispute that the Loss was "caused directly or indirectly by a change of temperature," i.e., high levels of heat. Third, the change in temperature was the result of the battery dying, which plainly translates into an interruption in the thermostat's power source, or a "power interruption." Finally, the power interruption was isolated to the thermostat, therefore there were no interruptions to the power lines off residence.

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
6

1  Because the Court finds that the Loss is eligible for coverage under the Power Interruption
2  Provision, the Court will now analyze whether the Loss is nevertheless excluded from coverage
3  under the exceptions State Farm raises.

### 2. Loss Insured Exceptions

State Farm argues that the Loss is not subject to coverage pursuant to the Policy's exclusions for (1) "Mechanical Breakdowns," (2) "Cracking, Shrinking, Expansion, or Bulging," or (3) "Design, Workmanship, Maintenance."

To reiterate, exclusionary clauses are construed strictly against the insurer and liberally in favor of insureds. *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3rd 262, 271 (Cal. 1984).

#### a. Mechanical Breakdown

The term "mechanical breakdown" is not defined in the Policy. State Farm urges the Court to take a liberal reading of "mechanical breakdown" to include a battery dying. Cross-MSJ 8–10. Alternatively, State Farm argues that the failure of the furnace to shut down after the thermostat battery died constitutes a "mechanical breakdown" because the "faulty" furnace switch was "defective or malfunctioning equipment." *Id.* at 9. The Court will discuss each theory in turn.

##### i. Thermostat Battery

To consider the phrase in pieces, State Farm essentially argues that (1) "mechanical" can encompass a situation where an appliance experiences a breakdown that requires "replacement or repair," Cross-MSJ 8–9; and (2) "breakdown" can encompass a situation where an appliance "cease[s] functioning" properly, *id.* at 10. Taken together, State Farm argues that because the battery in the thermostat "ceased functioning" and required a "replacement" battery, it qualifies as a "mechanical breakdown." *Id.* at 8–10.

In arguing that "mechanical breakdown" can encompass a broad range of events, including a battery ceasing to function thereby requiring a replacement battery, State Farm relies largely on *William C. McCaughey, et al. v. Ohio Sec. Ins. Co., et al.*, 2021 WL 2548689, at *2 (C.D. Cal. Apr. 2, 2021). The parties in *McCaughey* disputed whether water damage caused by a malfunctioning toilet was covered under the plaintiff insured's policy, and the court adopted the

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
7

broad interpretation of "mechanical breakdown" to include "malfunctioning." *Id.* at *6. Unlike here, the insured's policy covered "mechanical breakdowns," so the insured asked the Court to incorporate "mechanical breakdowns" broadly to include "malfunctioning." *Id.* The insurer, on the other hand, asked the court to find that "mechanical breakdowns" only encompass situations where there is a "replacement or repair" required. *Id.* The court recognized that the undefined term "mechanical breakdown" was ambiguous, and in resolving all ambiguities in favor of the insured, the court rejected the insurer's limiting definition and chose to adopt the insured's broader interpretation of "mechanical breakdown" to include "malfunctioning."[1] *Id.* State Farm appears to use this holding to show that "mechanical breakdown" can be broadly interpreted to even include a "malfunction." *See* Cross-MSJ 8–10.

In contrast, Spalinger urges the Court to discern the commonsense interpretation of "mechanical breakdown" from Webster dictionary definitions, whereby "mechanical" is defined as "(1) of or relating to machinery; (2) produced or operated by a machine or tools," and "breakdown" is defined as "the failure to function."  Pl.'s Opp'n 14.  In line with these definitions, Spalinger argues that an ordinary person would not consider a battery as "machinery," nor a battery running out of power as a "breakdown." *Id.*

The Court agrees with Spalinger.

As an initial matter, the Court finds State Farm's reliance on *McCaughey* misplaced. While it is true that the court took a broad interpretation of "mechanical breakdown," it was the *insureds* who sought to establish that their loss constituted a mechanical breakdown; the *insurer*, on the other hand, disputed whether there was a "mechanical breakdown" and requested a more limiting definition that excluded "malfunction."  Here, it is the *insured* who asks the Court to find that "mechanical breakdown" can encompass a broad variety of events, including a battery ceasing to function and requiring a replacement, and the *insurer* who asks the Court to implement a

---

[1] Regardless, the court ultimately concluded that a subsequent agreement removed "mechanical breakdowns" from the policy and found in favor of the insured. *McCaughey*, 2021 WL 2548689, at *7.

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
8

narrower reading of the term consistent with what a reasonable consumer may believe "mechanical breakdown" to mean. This distinction is vital given the burden of proof and precedent for construing ambiguous terms in favor of the insured.

Here, interpreting "mechanical breakdown" in its ordinary and popular sense and resolving any ambiguity liberally in favor of the insured, the Court finds that a battery "ceasing to function" thereby requiring a "replacement or repair" does not encompass a reasonable consumer's understanding of a "mechanical breakdown." State Farm's far-reaching interpretation of a "mechanical breakdown" would fail to put the reasonable consumer on notice of the specific events excluded from the Policy. The general public would not consider a battery to be "machinery," no less the death of a battery to constitute "mechanical breakdown."

Ultimately, the Court agrees with Spalinger's characterization—"a battery running out of power is not a mechanical breakdown," Pl.'s Opp'n 1, "[i]t is the anticipated natural conclusion at the end of a battery's life span."[2] *Id.* at 2.

### ii.   Furnace Switch

The Court is also unpersuaded by State Farm's alternative argument, that the "faulty" furnace switch could be considered the "mechanical breakdown" that excludes coverage.

First, in its denial letter, State Farm itself stated that it denied coverage because "[t]he predominant cause of loss is mechanical breakdown of the *thermostat*." Undisputed Facts 8–9 (emphasis added). State Farm did not base its denial on the furnace switch failing to shut off.

Second, the record does not support State Farm's assertion that the safety function of the furnace malfunctioned. While State Farm highlights that the heating company Della Mora concluded that the furnace "had a bad high temperature limit switch, not tripping at the setting temperature of 170 degrees, tripping at 215 degrees," there is no evidence on the record to support State Farm's assertion that "bad" equates to a mechanical breakdown; to the contrary, the Parties

---

[2] The Court notes that the consultant's statement that the batteries "suffered a total loss and corroded within the designated battery slot within the thermostat…rendering the thermostat inoperable" does not change this conclusion. Cross-MSJ 2. There is nothing in the record to suggest that the battery dying was caused by anything other than its natural termination.

Case No.:   5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
9

1   stipulated that the reason the temperature limit switch did not trip at the setting temperature of 170

2   degrees was because the thermostat batteries died, not because of any other independent basis. *Id.*

3   at 3 ("During the time in which the thermostat was without battery power, it was unable to

4   communicate with the furnace, resulting in the furnace providing excessive heat to the property.").

5   Third, State Farm's argument fails under the efficient proximate cause doctrine, which

6   "provides that when a loss is caused by a combination of a covered and specifically excluded

7   risks, the loss is covered if the covered risk was the efficient proximate cause of the loss, but the

8   loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was

9   the efficient proximate, or predominate cause." *Safarian v. Fire Ins. Exch.*, No. B323862, 2023

10  WL 7513040, at *7 (Cal. Ct. App. Nov. 14, 2023) (internal quotations omitted) (citing *Brown v.*

11  *Mid-Century Ins. Co.*, 215 Cal.App.4th 841, 855 (Cal. 2013); *see also Dallah & Dallah, Inc. v.*

12  *State Farm Gen. Ins. Co.*, No. 521CV01348JWHSHK, 2023 WL 8351528, at *4 (C.D. Cal. July

13  24, 2023) ("If the predominate cause of loss is a covered risk, then the insured's claim will be

14  covered, even if a non-insured peril contributed to the injury.") (citing *Julian v. Hartford*

15  *Underwriters Ins. Co.*, 35 Cal. 4th 747, 754 (Cal. 2005)). Here, even if the Court accepts

16  Spalinger's assertion that the furnace switch was faulty in some way, the thermostat battery dying

17  was indisputably the first domino, and therefore the efficient proximate cause of the loss.[3]

18  **b.   "Cracking, Shrinking, Expansion, or Bulging"**

19  Next, State Farm argues that the damage to the Property "plainly involved" "cracking,

20  shrinking, expansion, or bulging," which is excluded under the Policy. Cross-MSJ 10–11.

21  Unlike in the section prior, the Court does not need to define the words "cracking,

22  shrinking, expansion, or bulging." There is no reasonable dispute that the Loss, as State Farm

23  phrases it, *involved* cracking, shrinking, expansion, or bulging. Instead, the Court looks to the

24  limiting language at the top of the Cracking, Shrinking, Expansion, or Bulging Provision: "We do

---

[3] The Court rejects State Farm's argument that the battery dying and the furnace switch potentially failing are as comparably inseparable as oxygen causing fire and therefore excluded from the efficient proximate cause theory. Def.'s Opp'n 3 (citing *Pieper v. Commercial Underwriters Ins. Co.*, 59 Cal. App. 4th 1008, 1020 (Cal. 1997).

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
10

not insure for any loss to the property described in Coverage A *which is caused by one or more of the items below . . . .* " In other words, the Policy specifically excludes from coverage damage that is *caused by* cracking, shrinking, expansion, or bulging.

Here, the cracking, shrinking, expansion, or bulging in Spalinger's home is the damage that Spalinger experienced due to the thermostat battery dying, it was not the "cause" of her damages.[4] This places the Loss squarely outside the reach of this exception.[5]

### c. "Design, Workmanship, Maintenance"

Finally, State Farm argues that the Loss is excluded from coverage under the Design, Workmanship, Maintenance exception, reasoning that either Dinner's workmanship was defective, or the heating system was defective, or Plaintiff's maintenance was defective. Cross-MSJ 12. However, State Farm offers no evidence to support any of these theories.

Instead of supplying evidence, State Farm merely resuscitates the stipulated facts establishing that Dinner installed the heating system in October of 2020; Spalinger's daughter visited the Property in June 2021 and set the thermostat to sixty-two degrees; no one visited the Property again until September 12, 2021; because the batteries died/corroded, the thermostat did not control the furnace, which did not shut off; and the furnace did not shut off at 170 degrees as it should have, but at 215 degrees. Def.'s Opp'n 5. From these facts alone, State Farm concludes:

> Either Dinner's workmanship was defective or faulty because he did not test the furnace before installing it, or set it at the wrong temperature, the heating system was defective, inadequate, or faulty in its design or specifications, or plaintiff failed to maintain the heating system by not changing the batteries in the thermostat, and by leaving the Property vacant for over two months. Any one of these circumstances dictates that there is no coverage for the resulting loss.

*Id.*

---

[4] State Farm's careful wording of "plainly involved," rather than "caused," supports the assumption that State Farm does not attempt to argue that the cracking, shrinking, expansion, or bulging caused the damage. Cross-MSJ 10.

[5] Because the Court finds that the Loss does not fall under this exclusion, the Court will not address State Farm's arguments regarding the "Ensuing Loss Provision," which restores coverage for an excluded loss when a covered loss flows or ensues from that earlier excluded loss. Cross-MSJ 11.

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
11

These are speculative legal conclusions unsupported by evidence in the record. There is nothing in the record to suggest that Dinner's workmanship (i.e., his replacement of the thermostat and furnace) led to the batteries dying. There is also nothing in the record to suggest that the heating system was defective, as discussed in the section prior. Regarding maintenance, in addition to not defining "maintenance," State Farm offers no support that Spalinger failed to maintain other than to highlight that Spalinger used the Residence as a part-time vacation home. Indeed, the fact that both her thermostat and furnace were replaced not even a year prior suggests that Spalinger had been maintaining the heating.

\* \* \*

Therefore, the Court finds that the Loss is covered under the Power Interruption Provision and is not excluded under any of the exceptions offered by State Farm. The Court **GRANTS** Spalinger's motion for partial summary judgment.

### B. State Farm's Cross-Motion for Summary Judgment as to the Remaining Claims

In addition to arguing that the Loss is not covered, State Farm moves for summary judgment as to all other claims, arguing that: (1) Spalinger's bad faith claim fails because State Farm handled her claim reasonably as a matter of law, and her UCL claim fails because State Farm did nothing unlawful, unfair, or fraudulent as a matter of law; (2) Spalinger cannot establish her claim for punitive damages as a matter of law; and (3) State Farm is entitled to summary judgment of Spalinger's UCL claim because she has an adequate remedy at law.

The Court finds these arguments premature. [6]

---

[6] Anticipating the Court's finding that a large portion of the cross-motion for summary judgment is premature, State Farm explained that it "filed the instant motion seeking summary judgment of all plaintiff's causes of action because the Court's Standing Order for Civil Cases only permits one motion per party." Def.'s Opp'n 7. In the event that the Court granted Plaintiff's motion, State Farm requests leave to file a second motion. *Id.* The Court recognizes that the present motions were filed pre-discovery to narrow the legal issues moving forward. Should State Farm wish to file a second motion for summary judgment in accordance with Federal Rule of Civil Procedure 56, no sooner that 30 days after the close of all discovery, State Farm may file for leave at that time.

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
12

### 1. Bad Faith and Unlawful, Unfair, or Fraudulent Conduct

First, the Court finds it premature to grant State Farm's request for a holding that, as a matter of law, it was reasonable for State Farm to deny the claim and State Farm did nothing unlawful, unfair, or fraudulent. Cross-MSJ 14–17, 18–19. Spalinger has not yet completed discovery into the question of whether State Farm's conduct was done in bad faith, or whether it was unlawful, unfair, or fraudulent. Pl.'s Opp'n 8–9. As indicated in the Parties' joint trial setting conference statement, the Parties worked together and agreed to a Stipulation of Facts to file cross-motions for summary judgment, removing the possibility of a triable issue of material fact preventing the Court's adjudication of the key legal issues between the parties, i.e., whether the Loss is covered. Joint Trial Setting Statement 3, ECF No. 35.[7] However, after the Court has narrowed the legal issues presented by the cross-motions for summary judgment, the Parties plan to continue discovery if necessary. *Id.* Should the Court not grant State Farm's motion, Spalinger has indicated that she plans to notice the deposition of State Farm's claim handler and work through her claim file and decision-making. Pl.'s Opp'n 8–9. Therefore, the Court finds that it does not yet have the full record of evidence before it necessary to determine whether there is a genuine dispute of material fact.

### 2. Malice, Oppression, or Fraud

Second, the Court similarly finds it premature to grant State Farm's request for a holding that, as a matter of law, State Farm did not act with malice, oppression, or fraud at this stage. Cross-MSJ 20–22; *see also Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1164–65 (9th Cir. 2002) ( "Punitive damages are available if . . . the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious.") (quotation and citation omitted). Again here, Spalinger has yet to engage in discovery to uncover facts potentially relevant to this inquiry. On this basis, summary judgment as to the punitive damages claim is not currently appropriate.

---

[7] The Court will not address Spalinger's request for judicial notice of this trial setting statement (ECF No. 41-1), as the Court is already permitted under the Federal Rules of Civil Procedure to consider all materials in the record. Fed. Rule Civ. Pro. 56(c)(1)(A), (c)(3).

### 3. Adequate Remedy at law

Finally, the Court finds it premature to grant State Farm's request for a holding that it is entitled to summary judgment as to Spalinger's UCL claims because Spalinger is precluded from seeking UCL's sole remedy, equitable relief. Cross-MSJ 17–18. State Farm argues that Spalinger has an adequate remedy at law and is therefore prohibited from seeking injunctive relief under the UCL because Spalinger relies on the same conduct in her request for injunctive relief as in her request for monetary damages. *Id.* at 18 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that federal courts must apply federal equitable principles to state-based equitable claims, such that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA")).

At present, the Court has no evidence to evaluate in this inquiry, only a review of the conduct alleged in the complaint. Upon reviewing the complaint alone, the Court observes that Spalinger's UCL claim does not rely solely on the conduct in which she relies for her monetary relief claims. Spalinger requests injunctive relief under the UCL "enjoining the performance of any proven unfair business practices in the future and mandating that State Farm properly train its claims handling personnel to recognize duty to defend implications as alleged hereinabove." Compl. 11. Separately, Spalinger requests monetary damages to cover the costs caused by the Loss, the costs of the suit, and attorneys' fees under her claims for tortious breach and breach of contract. *Id.* at 10–11. As to her UCL claim for injunctive relief, Spalinger alleges that State Farm (1) selectively quoted or omitted language from the policy in their communications for the intended purpose of misleading Spalinger, and (2) failed to properly train claims handling staff to recognize policy benefits owed. Compl. ¶ 41. As to her tortious breach claim for monetary relief, Spalinger alleges that State Farm knowingly or negligently failed to pay the policy benefits for the purposes of financially benefitting itself with the knowledge that their conduct would harm Spalinger. *Id.* ¶ 35. As to her breach claim for monetary relief, Spalinger alleges that State Farm failed to investigate her claim promptly and thoroughly before denying her claim in error. *Id.* ¶ 29. Notably, Spalinger's claims for monetary damages do not allege that State Farm selectively

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
14

quoted or omitted policy language in its communications with her or failed to properly train its staff.

Therefore, the Court declines State Farm's request to find summary judgement as to Spalinger's UCL claims currently.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Spalinger's motion for partial summary judgment and **DENIES** State Farm's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 5, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-04193-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; DEN. CROSS-MOT. FOR SUMM. J.
15